UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                             No. 20-CR-1900-MV

KENDEL MORRELL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Mr. Morrell's Supplemental Sentencing Briefing, in which he seeks application of the safety-valve provision set forth at 18 U.S.C. § 3553(f)(1). Dkt. 167. The Court held sentencing hearings on October 31, 2023, and on January 26, 2024. At the hearings, the Court addressed the safety-valve issue, and sentenced Mr. Morrell to a term of imprisonment of 40 months. In this Memorandum Opinion and Order, the Court provides the rationale for its application of the safety-valve provision to Mr. Morrell.

## BACKGROUND

On November 15, 2021, Mr. Morrell pleaded guilty to Count Four of a four-count Superseding Indictment (Dkt. 92), charging him with Distribution of 5 Grams and More or Methamphetamine and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Dkt. 115. Pursuant to an Order Requesting Supplemental Briefing (Dkt. 165), both parties submitted briefing on whether Mr. Morrell is safety-valve eligible under 18 U.S.C. § 3553(f). Dkts. 167, 168.

## DISCUSSION

The safety-valve provision set forth in 18 U.S.C. § 3553(f)(1) permits the Court to sentence

a defendant without regard to any statutory minimum sentence if:

> (1) the defendant does not have—
>    (A) more than 4 criminal history points, excluding any criminal history points from a 1-point offense, as determined under the sentencing guidelines;
>    (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>    (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

18 U.S.C. § 3553(f)(1). The defense argues that the "and" in this provision is conjunctive, such that a defendant is eligible for safety-valve relief so long as he does not have all three of the characteristics itemized in subsections (A) through (C). Dkt. 167 at 1. In support of its statutory interpretation, the defense cites to a recent Fourth Circuit opinion in which the Court read the "and" as conjunctive and, accordingly, found that a defendant who met one of the characteristics, but not the other two, was nonetheless eligible for safety-valve relief. *Id.* (citing *United States v. Jones,* 60 F.4th 230 (4th Cir. 2023)). Under a conjunctive reading of the statute, Mr. Morrell is safety-valve eligible because he does not satisfy *all three* criteria. Specifically, Mr. Morrell has more than four criminal history points and a prior three-point offense, but he does not have a prior two-point violent offense under the sentencing guidelines. Dkt. 167 at 4. Because he meets only two of the three criteria in § 3553(f)(1), the defense asserts that the Court can impose a sentence without regard to a five-year mandatory minimum.

In contrast, the government argues that a defendant who meets *any* of the three criteria itemized in subsections (A) through (C) of § 3553(f)(1) is ineligible for safety-valve relief. Dkt. 168 at 2. In the government's reading, § 3553(f)(1) contains a prefatory "not," which should be read as being distributed to each of the three conjoined elements, rather than given the purely conjunctive reading adopted in *Jones*. The government acknowledges that the ordinary meaning of "and" is conjunctive and that there is a presumption that the ordinary meaning of the text is binding. Nonetheless, it argues that where the ordinary reading frustrates clear legislative intent,

this presumption can and should be overcome. *Id.* at 13. The government cites precedent for the proposition that "and" may frequently and appropriately be construed to mean "or,"[1] and argues that such precedent is applicable here. *Id.* at 12–13. According to the government, the em-dash following the words "does not have," along with the introduction of each requirement with an enumerating letter (A, B, and C) and the use of semicolons to separate the requirements, supports an interpretation in which the word "not" in the prefatory phrase modifies each requirement individually. *Id.* at 16.

### A. The proper reading of § 3553(f)(1) gives the word "and" its ordinary and conjunctive meaning.

There is a current circuit split on the appropriate reading of § 3553(f)(1), and the question is currently before the Supreme Court on the appeal of *United States v. Pulsifer,* 39 F.4th 1018 (8th Cir. 2022). The Tenth Circuit has not issued a ruling on this question. Nevertheless, Supreme Court and Tenth Circuit precedent supports the conclusion that the statute is conjunctive.

Where a clear reading of a statute, based on the plain meaning and ordinary construction of the words, is available, the Court's inquiry begins and ends with that clear reading. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020). Here, the clear reading of 18 U.S.C. § 3553 (f)(1) is that the word "and" functions conjunctively to join each of the conditions listed therein. Accordingly, a defendant is eligible for safety-valve relief unless all three of the conditions itemized in A, B, *and* C are present.

---

[1] *United States v. Fisk*, 70 U.S. 445, 447 (1865) ("In order to [ascertain Congressional intent], courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or."); *Noell v. Am. Design, Inc.*, 764 F.2d 827, 833 (11th Cir. 1985) ("It is an established princip[le] [t]hat the word 'or' is frequently construed to mean 'and,' and vice versa, in order to carry out the evident intent of the parties.").

Statutes are crafted with care. There are rules and standards that guide Congress in drafting law. The Senate's legislative drafting manual confirms the ordinary, plain meaning of the "and" in § 3553(f)(1). *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021). The manual is clear that the term "and" should be used to join a list of conditions when the intent is for them to be read conjunctively:

> In a list of criteria that specifies a class of things— (1) use "or" between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria; and (2) use "and" to indicate that a thing is included in the class only if it meets all of the criteria.

Office of the Legislative Counsel, *Senate Drafting Manual* 64 (1997).

Tenth Circuit cases involving statutory interpretation similarly instruct the court to begin with "the plain language" of the statute. *United States v. Brown*, 529 F.3d 1260, 1264 (10th Cir. 2008). The "inquiry ends there 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)). The court's duty "[w]hen confronted with clear and unambiguous statutory language…is simply to enforce the statute that Congress has drafted." *United States v. Ortiz*, 427 F.3d 1278, 1282 (10th Cir. 2005).

The structure of § 3553(f)(1) is an example of a well-tread grammatical construction, a conjunctive negative proof. In *Reading Law*, Justice Scalia and Bryan Garner offer the following example of a conjunctive negative proof: "To be eligible, you must prove that you have not A, B, and C." Antonin Scalia & Bryan Garner, *Reading Law* 120 (2012). Eligibility is available to the subject who has not done all three—A, B, and C—collectively. The alternative is a disjunctive negative proof: "To be eligible, you must prove that you have not A, B, or C." *Id.* To be eligible under a statute structured in this manner, Scalia and Garner write, "[the subject] must have done

none." *Id.* The provision at issue, § 3553(f), is a clear example of the first construction—a conjunctive negative proof, rather than the second—a disjunctive negative proof.

While the government argues that the em-dash in § 3553(f)(1) distributes the prefatory "not" to each of the following conditions, there is no clear grammatical argument to support this. Although the government argues that "contextual considerations" necessitate reading the statute disjunctively, it is well-established law that "context doesn't trump ordinary meaning." *Lamie v. United States Trustee* 540 U.S. 526, 536 (2004). A policy preference against a more expansive approach to safety-valve eligibility is not an appropriate contextual consideration in statutory interpretation. Even if the government believes that such an expansion of eligibility would be ill-advised, "no amount of policy-talk can overcome a plain statutory command." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).

The canon of consistent usage further buttresses the plain reading of the statute. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 22 (2005). In addition to *not* meeting the conditions enumerated in subsections (A) through (C) of § 3553(f)(1), a defendant *mus*t meet the requirements listed in sections (1) through (5) of §3553(f) to be safety-valve eligible. The statute uses the word "and" to join the list of requirements enumerated in § 3553(f)(1) through (5), just as it does to join the list of conditions enumerated in subsections (A) through (C) of § 3553(f)(1). Neither party argues that any one of the requirements listed in § 3553(f)(1) through (5) is sufficient on its own to qualify a defendant for safety-valve relief. Rather, the use of "and" requires that a defendant meet all five requirements to be eligible. The Court reads the "and" in the list of conditions in subsections (A) through (C) of § 3553(f)(1) to have the same plain meaning that it does when it joins the lists of requirements in sections (1) through (5) of § 3553(f). Any other reading would

cut against a well-established canon of statutory interpretation and, indeed, a common sense reading of the statute.

### B. The statutory purpose of the First Step Act supports the Court's reading of the statute.

The Court's conjunctive reading of the statute aligns with the purpose of the First Step Act: to broaden the availability of safety-valve relief for nonviolent drug offenders. The First Step Act was "the culmination of an unprecedented bipartisan effort, both within and outside Congress, to undertake comprehensive sentencing and criminal justice reform." Br. of Sens. Durbin, Grassley, Booker, and Lee as Amici Curiae 3, *Terry v. United States*, No. 20-5904, 141 S. Ct. 1858 (2021) (Senators Br.).

The government argues that the Court's reading of the First Step Act goes beyond the "modest expansion of the safety-valve" envisioned by Congress. Dkt. 168 at 18 (citing, 164 Cong. Rec. S7749 (daily ed. Dec. 18, 2018) (statement of Sen. Leahy)). But this Court's plain meaning reading of the statute is, indeed, modest. First, the conditions at issue in § 3553(f)(1)(A) through (C) deal only with a defendant's criminal history. Safety-valve relief is already barred in many circumstances, namely, where the offense for which the defendant is being sentenced involves violence, threats of violence, or a dangerous weapon, where the offense led to the death or serious bodily injury of another person, where the defendant organized or led others in the commission of the offense or was engaged in a continuing criminal enterprise, and where the defendant is not forthcoming with any information regarding the offense or other related offenses 18 U.S.C. § 3553(f)(2)-(5). The category of offenses to which safety-valve relief could apply thus is already quite narrow.

Second, the First Step Act, "[b]y its terms…does not compel courts to exercise their discretion to reduce any sentence." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022).

The conjunctive reading of the statute does not automatically lead to lower sentences; rather, it merely allows courts to exercise a greater degree of discretion in sentencing an individual convicted of a non-violent drug offense. The Court's reading of the statute thus supports its purpose of giving courts broader discretion in sentencing defendants for non-violent drug offenses.

### C. A conjunctive reading of the statute does not render § 3553(f)(1)(A) superfluous.

In its brief, the government invokes the interpretive canon of surplusage. The government argues that any time a defendant satisfies the conditions in § 3553(f)(1)(B) and § 3553(f)(1)(C) by having both a three-point offense and a two-point violent offense, he or she would necessarily satisfy the condition of § 3553(f)(1)(A) by having more than four criminal history points excluding one-point offenses. Such a reading cannot have been intended by the drafters, the government argues, because it renders § 3553(f)(1)(A) superfluous. *Id.*

It is true that there is a strong presumption against reading a statute in such a way that would render any individual condition superfluous. *See Corley v. United States*, 556 U.S. 303, 314 (2009). However, even if this presumption were enough to overcome the plain meaning of the statute, a conjunctive reading of § 3553(f)(1) does not in fact render § 3553(f)(1)(A) superfluous. It is entirely possible that a defendant could have a three-point offense and a violent two-point offense and still not satisfy § 3553(f)(1)(A) if the offenses are far enough removed so as not to count toward the criminal history point calculation. Such a defendant would still be eligible for safety-valve relief, provided the remaining requirements set forth in § 3553(f)(2) through (5) were met.

This Court follows the Fourth Circuit's reasoning and declines to read the statute's requirement of a two-point violent offense as "proscribing a defendant from having *at least* a two-point violent offense." *Jones*, 60 F.4th at 237. It is neither proper nor necessary to rewrite the

statute in order to avoid superfluity. As Judge Smith noted in *Lopez*, "[t]wo points is two points. Two points is not three points. An interpretive canon, such as the rule against surplusage, 'is not a license for the judiciary to rewrite language enacted by the legislature.'" *Lopez*, 998 F.3d at 445 (Smith, J., concurring).

### D. The absurdity canon does not apply.

The government argues that a conjunctive reading of the statute leads to an absurd result "that [it is] confident Congress did not intend." Dkt. 168 at 17 (citing *United States v. Fitzgerald,* 906 F.3d 437, 447 (6th Cir. 2018) (quotation marks omitted); *United States v. Mobley,* 871 F.3d 1187, 1199 (10th Cir. 2020)). The "absurd result" identified by the government is that the conjunctive reading forecloses safety-valve eligibility for only those individuals who meet all three of the conditions listed in § 3553(f)(1), as opposed to foreclosing relief for individuals who meet any of the three conditions. *Id.* The government asserts that this is "absurd" because "there is nothing special about the combination of the criminal-history elements" in § 3553(f)(1). *Id.*

This is not the case. Each of the three listed conditions addresses a different aspect of a defendant's criminal history. The idea that only the combination of the three conditions should act to bar a defendant from safety-valve relief is not absurd, but rather perfectly reasonable given the concerns that they address: § 3553(f)(1)(A) targets recidivism, requiring multiple offenses within a given period; § 3553(f)(1)(B) targets serious offenses, requiring that the defendant has, at some point, committed a three-point offense that resulted in an adult sentence of imprisonment exceeding one year and one month; § 3553(f)(1)(C) targets violence, requiring that the defendant has, at some point, committed a violent two-point offense that resulted in a sentence of imprisonment of at least sixty days. Unless all three criteria are met, the Court retains the option to exercise discretion by sentencing the defendant without regard to a mandatory minimum. The

idea that Congress would want to bar defendants from safety-valve relief only if their history demonstrated that they were serious, violent, recidivists is not only plausible but also logical.

### E. Even if the Court found a distributive reading of the statute appropriate, the rule of lenity would prohibit that reading.

As noted above, the Court finds that the plain meaning of the statute is clear on its face and that Congress's use of the word "and" to join the terms in question is dispositive. However, even if the statute were ambiguous, the distributive reading proposed by the government would be barred by the rule of lenity. The rule of lenity requires courts to read ambiguous criminal statutes in favor of liberty. *Skilling v. United States*, 561 U.S. 358, 410 (2010); *see also Wooden v. United States*, 142 S. Ct. 1063, 1081 (2022) (Gorsuch, J., concurring in the judgment). The court "cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant," *Burrage v. United States*, 571 U.S. 204, 216 (2014). The rule of lenity applies to all criminal statutes, including those pertaining to criminal penalties. *Bifulco v. United States*, 447 U.S. 381, 387 (1980). The rule of lenity equally applies to sentencing provisions. *United States v. Batchelder*, 442 U.S. 114, 121 (1979).

The rule of lenity serves as an interpretive tiebreaker when "grievous ambiguity or uncertainty" exists as to the proper interpretation of the statute. *Maracich v. Spears*, 570 U.S. 48, 76 (2013). Thus, if "grievous ambiguity or uncertainty" did exist here, because of the rule of lenity, the government would not prevail in its position unless it were able to show not simply that "and" *may occasionally* be read as "or," but rather that "and" *unambiguously* does not mean "and" in the statute in question. The fact of a well-defined circuit split on the issue suggests that the government's reading of the statute is, at its strongest, "a guess as to what Congress intended." *Bifulco*, 447 U.S. at 387 (citations omitted). The rule of lenity thus presents an additional hurdle to the government's effort to limit the discretion of the trial court at sentencing.

### F. The Court interprets § 3553(f)(1) to afford Mr. Morrell safety-valve eligibility and has exercised its discretion to sentence him accordingly.

Following the Fourth Circuit, this Court finds that the "and" in § 3553(f)(1) is conjunctive and, accordingly, that safety-valve relief is barred only if all three of the conditions enumerated in subsections (A) through (C) are present.[2] Here, the condition enumerated in § 3553(f)(1)(C) is not present, as he does not have a prior two-point violent offense, as determined under the sentencing guidelines. Mr. Morrell thus is not foreclosed from safety-valve eligibility under § 3553(f)(1).

Further, Mr. Morrell meets the remaining requirements for safety-valve eligibility, as set forth in § 3553(f)(1) through (4), as follows: he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with this offense, § 3553(f)(1); the offense did not result in death or serious bodily injury to any person, § 3553(f)(2); Mr. Morrell was not an organizer or leader of others in the offense and did not engage in a continuing criminal enterprise; § 3553(f)(3); and he truthfully provided to the Government all information and evidence he had concerning the offense. § 3553(f)(4). Accordingly, Mr. Morrell qualifies as safety-valve eligible under 18 U.S.C. § 3553(f), and the Court exercised its discretion under this provision to sentence Mr. Morrell without regard to any statutory minimum.

ENTERED this 1st day of February 2024.

_____
MARTHA VÁZQUEZ
Senior United States District Judge

---

[2] See *Jones, supra*. See also *Lopez, supra*; *United States v. Garcon,* 54 F.4th 1274 (11th Cir. 2022). For the other side of the circuit split, see *Pulsifer, supra*; *United States v. Pace*, 48 F.4th 741 (7th Cir. 2022); *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022); *United States v. Haynes*, 55 F.4th 1075 (6th Cir. 2022).